[Civ. No. 22508. Third Dist. Aug. 29, 1984.]

In re the Marriage of IRMA B. and IRWIN E. TAYLOR.
IRMA B. TAYLOR, Appellant, v.
IRWIN E. TAYLOR, Respondent.

COUNSEL

Travers & Jacobs and Donald R. Travers for Appellant.

Baker, Cornell, Baumbach & Sweeney and Larry L. Baumbach for Respondent.

OPINION

**EVANS, Acting P. J.**—On appeal from a finding that the family house was respondent husband's separate property, wife contends the characterization was unsupported by the evidence presented. For reasons not asserted by wife, we must reverse.

The parties were married on October 3, 1979. In 1980, they purchased a lot and built a home entirely financed by husband's separate property funds. Title was taken in joint tenancy.

Wife petitioned for dissolution on January 7, 1982. A trial was held solely on the issue of whether the house was community or separate property. The

court found that wife had an understanding that the house was to be husband's separate property. An interlocutory judgment was entered November 23, 1982, and wife appealed.

At the time of trial, *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 653, 614 P.2d 285], was dispositive. *Lucas* permitted a spouse to prove marital property held in joint tenancy was actually separate property by means of an understanding or agreement with the noncontributing spouse that the property was to remain separate property or that the amount of the investment was to be reimbursed. (P. 815.) The agreement was not required to be in writing.

Subsequently, two sections have been added to the Civil Code which affect the issue before us. They state in pertinent parts: "§ 4800.1 For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:

"(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.

"(b) Proof that the parties have made a written agreement that the property is separate property."

"§ 4800.2 In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division." (Added by Stats. 1983, ch. 342.)[1]

We are confronted with the threshold question of whether sections 4800.1 and 4800.2 govern property rights acquired prior to the effective date of enactment that have not been finally adjudicated by a judgment from which the time for appeal has passed. We conclude that they do. In doing so we have subordinated the presumption against retroactive application of statutes to the fundamental theorem of statutory construction that the intent

---

[1]All further references are to the Civil Code.

of the Legislature, where possible, be given effect. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 586-587 [128 Cal.Rptr. 427, 546 P.2d 1371].) The principal question therefore is whether the Legislature intended sections 4800.1 and 4800.2 to operate retroactively. In this instance we are given direct access to the uncodified, but stated intent of the Legislature. Statutes of 1983, chapter 342, section 4 (uncod.) provides, "SEC. 4. This act applies to the following proceedings: [¶] (a) Proceedings commenced on or after January 1, 1984. [¶] (b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1, 1984." It clearly makes these provisions applicable to any proceeding not final as of January 1, 1984; they are applicable to this appeal.

We also conclude that retroactive application of section 4800.1 does not deny husband due process. ■ All retrospective legislation is not invalid merely because it operates as such. It becomes invalid if it deprives a person of vested rights which are respected or protected by the state, or if it impairs the obligation of contract. (*Robertson* v. *Willis* (1978) 77 Cal.App.3d 358, 365[143 Cal.Rptr. 523].)

■ We fail to find in section 4800.1 any interference with vested rights. Rather, the section alters the evidentiary burden of proof when a husband and wife take property by a joint tenancy deed. (*In re Marriage of Neal* (1984) 153 Cal.App.3d 117, 121-124 [200 Cal.Rptr. 341]; *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20 [202 Cal.Rptr. 646].)

Although the record does not reveal a written agreement (§ 4800.1, subd. (b)), the matter must be remanded for retrial to permit consideration of evidence on the questions of separate property contribution and reimbursement. (§ 4800.2.) There was no apparent question concerning the source of acquisition funds. Testimony presented at the trial indicates husband used separate funds to purchase the lot and to build the house; apparently, wife contributed funds to build a fence and should be reimbursed. Each party is entitled to reimbursement of the amounts paid out of separate property funds, to the extent they can be traced.

The instrument of title does not indicate a retention of the separate character of the property, nor was a written agreement relative to separate property asserted. (§ 4800.1, subd. (a).)

The judgment is reversed and the matter is remanded for retrial in order to determine the parties' respective interests pursuant to sections 4800.1 and 4800.2.

Carr, J., concurred.

**SIMS, J.**—I respectfully dissent.

The trial court found wife understood the family home was husband's separate property. (Maj. opn., *ante,* at pp. 472-473.) The majority upsets this finding for one reason: husband and wife's failure to foresee in 1980 that the 1983 Legislature would require them to have put their 1980 understanding in writing. For this lack of prescience the majority deprives husband of his separate property interest in the family home.

The majority opinion applies Civil Code section 4800.1,[1] retroactively according to the Legislature's wishes (see Stats. 1983, ch. 342, § 4 [uncodified]), without seriously considering the statute's effect on husband's vested property rights. (See *Robertson* v. *Willis* (1978) 77 Cal.App.3d 358, 365 [143 Cal.Rptr. 523].) The majority dismisses section 4800.1 as merely altering the "evidentiary" burden of proof, oblivious of the fact that the new burden can only be met by evidence whose time for creation has long since passed. (Maj. opn., *ante,* at p. 474; cf. *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 30 [202 Cal.Rptr. 646].) I conclude application of section 4800.1 to this case, where the property was acquired prior to that section's effective date (Jan. 1, 1984), creates an *impossible* burden of proof and thus deprives husband of his separate property without due process of law. (See, e.g., *Wells Fargo & Co.* v. *City etc. of S. F.* (1944) 25 Cal.2d 37, 41 [152 P.2d 625] (opn. by Traynor, J.); *Wexler* v. *City of Los Angeles* (1952) 110 Cal.App.2d 740, 747 [243 P.2d 868]; compare *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]; *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520, 534-537 [41 Cal.Rptr. 190].)

I begin with an undisputed premise: that husband's interest in the family home was a property interest, and was created at the time the lot was purchased and the house constructed. The status of property as community or separate is normally determined as of the time of acquisition. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 591; *Trimble* v. *Trimble* (1933) 219 Cal. 340, 343 [26 P.2d 477]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 6, p. 5098.) Once property is acquired its owner has a vested right to it and it may not be taken or transmuted by the government without due process of law. (See *Robertson* v. *Willis, supra,* 77 Cal.App.3d at p. 365; 5 Witkin, *op. cit. supra,* Constitutional Law, § 282, p. 3571.) Since husband's separate funds were used to acquire the

---

[1]All further statutory references are to the Civil Code.

lot and construct the house (maj. opn., *ante,* at p. 472), his separate property interest therein may not be taken through retroactive legislation without following the dictates of due process. (*Ibid.*)

Section 4800.1 has been interpreted by other Courts of Appeal to be a mere rule of evidence intended to narrow the court's retrospective inquiry into the status of property by limiting that inquiry to a search for written evidence. (See, e.g., *In re Marriage of Leversee* (1984) 156 Cal.App.3d 891 [203 Cal.Rptr. 481]; *In re Marriage of Martinez, supra,* 156 Cal.App.3d 20; *In re Marriage of Buford* (1984) 155 Cal.App.3d 74 [202 Cal.Rptr. 20]; *In re Marriage of Hug* (1984) 154 Cal.App.3d 780 [201 Cal.Rptr. 676]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572 [201 Cal.Rptr. 498]; and *In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341].)[2] Because a party usually has no vested right in a particular rule of procedure or evidence, the Legislature is ordinarily free to change such rules and to give the change retroactive effect. (See *San Bernardino County* v. *Indus.Acc.Com.* (1933) 217 Cal. 618, 628 [20 P.2d 673]; 5 Witkin, *op. cit. supra,* Constitutional Law, § 285, pp. 3574-3575.)

There is, however, an important exception to this rule, which the majority and other cases reviewing section 4800.1 have overlooked. The Legislature cannot, by a purported change in procedure, cut off all remedy. Unless it leaves a reasonably efficient remedy to enforce the right, the right itself is affected, and the statute will be held invalid as an impairment of a substantive right. (*Wells Fargo & Co.* v. *City etc. of S. F., supra,* 25 Cal.2d at p. 41; 5 Witkin, *op. cit. supra,* Constitutional Law, § 286, pp. 3575-3576; cf. *Lane* v. *Wilson* (1939) 307 U.S. 268, 275-277 [83 L.Ed. 1281, 1287-1288, 59 S.Ct. 872].) Applying section 4800.1 retroactively works just such an impairment, as this case amply demonstrates.

The trial court found that in 1980 when the parties purchased the lot and constructed the house, wife understood that both house and lot would remain husband's separate property. (Maj. opn., *ante,* at pp. 472-473.) At the time no statutory or case law required the parties to place their understanding in writing. When the property was acquired, an unwritten "agreement or understanding" could suffice to preserve the separate property interest in a residence even though title was taken in joint tenancy. (See *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285]; *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17, 23 [176 Cal.Rptr. 274].)

By enacting section 4800.1, however, the 1983 Legislature enacted a rule of "evidence" with which the parties could not possibly comply, even if

---

[2]Of these cases, only *Martinez* addressed the due process issue; it blithely disposed of the constitutional contention in a single sentence. (*Martinez, supra,* 156 Cal.App.3d at p. 30.)

they wanted to, for they could not go back in time to create the missing written agreement. The majority implicitly recognizes husband's dilemma: "The instrument of title does not indicate a retention of the separate character of the property, nor was a written agreement relative to separate property asserted." (Maj. opn., *ante,* at p. 474.) Unlike the majority, however, I cannot simply end the matter there, with the conclusion that the residence must be community property. Husband's existing vested separate property interest may not be so cavalierly defeated in the guise of a mere rule of evidence.[3]

The Legislature can impair vested property rights provided that retroactive application of legislation is necessary to serve a sufficiently important state interest. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-593; *Robertson* v. *Willis, supra,* 77 Cal.App.3d at p. 367; *Flournoy* v. *State of California, supra,* 230 Cal.App.2d at p. 534.) Retroactive application of a statute affecting vested separate or community property rights has generally been upheld in order to remedy a "rank injustice of the former law." (*Bouquet, supra,* 16 Cal.3d at p. 594, fn. omitted.) For example, in *Addison* v. *Addison, supra,* 62 Cal.2d 558, the court upheld the retroactive application of California's quasi-community property legislation so as to allow a wife to obtain a community property share of assets acquired during the marriage by the husband while the parties were domiciled in the state of Illinois. There, however, the court said, "We are of the opinion that where the innocent party would otherwise be left unprotected the state has a very substantial interest and one sufficient to provide for a fair and equitable distribution of the marital property without running afoul of the due process clause of the Fourteenth Amendment." (*Addison, supra,* at p. 567.) Similarly, in *Bouquet,* the court upheld retroactive application of Civil Code section 5118 allowing a husband to retain earnings and accumulations acquired by the husband after date of separation. There the court said, "The state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law." (*Bouquet, supra,* at p. 594.)

---

[3]It cannot seriously be contended that section 4800.2's reimbursement provision provides an aggrieved spouse a "remedy" for having lost separate property to the community via retroactive application of section 4800.1. Section 4800.2 allows reimbursement only for *contributions* measured at the time of the property's conversion into joint tenancy, and conclusively assigns all appreciation in value to the community. (See *In re Marriage of Neal, supra,* 153 Cal.App.3d at p. 121.) More importantly, section 4800.2 provides for what is in effect a forced sale of separate property to the community and may leave the contributing spouse not with the unique property he or she started with but with a mere monetary substitute. This is no laughing matter. The "unique property" at issue will often be a family residence which, in some cases, will have been the property of that family for generations.

Here, however, the statute remedies no comparable unfairness. There was no manifest unfairness in the rule of *Lucas*. There is nothing unfair in letting husband retain his separate property interest in a lot and residence financed solely with his separate funds in accordance with the parties' contemporaneous understanding. Nor is there any inherent unfairness in having property rights depend on the unwritten agreements or understandings of lay persons, most of whom do not share the legal community's fondness for writings. Even if spouses swear before 40 bishops that the spouses agree property being put in joint tenancy shall remain the separate property of a spouse, and even if the 40 bishops testify to that effect in court, section 4800.1 operates to deny the separate property interest in the absence of a writing. Section 4800.1 may provide a more convenient rule of evidence for trial courts, but it does not remedy a situation of manifest unfairness.[4] Moreover, to the extent the statute furthers a policy of evidentiary convenience, that policy is not served by application of the statute to cases already tried. Surely the already overburdened trial judges of our state do not need the convenience of retrials that will result from the retroactive application of this ill conceived statute.

Indeed, in this case it is manifestly unfair to apply section 4800.1 as the majority has done. The majority deprives husband of his separate property interest although he fully complied with the law as it stood when he acted. This result is obviously at odds with the state's interest in obtaining an equitable distribution of marital property upon dissolution. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 593.)

Finally, I see no reason to reach out and touch section 4800.1 with the imprimatur of constitutionality, because the majority's result is extremely

---

[4]In *In re Marriage of Martinez, supra,* 156 Cal.App.3d 20, the court suggests that retroactive application of section 4800.1 is supported by the fact that *Lucas* was also given retroactive effect. (P. 30, fn. 3.) Indeed, courts have applied *Lucas* retroactively to require parties claiming a separate property interest in joint tenancy property to show they had the requisite "agreement or understanding," even though the case requiring such agreement or understanding—*Lucas*—had not yet been decided. (See, e.g., *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 60 [191 Cal.Rptr. 545].)

Retroactively applying section 4800.1 is, however, vastly different from retroactively applying *Lucas*. *Lucas* merely scrutinizes the circumstances surrounding the act of acquiring property; it asks, did the spouses understand they were buying the property of one of them or of both of them? In the nature of things, spouses would either have had a contemporaneous understanding that separate property would remain separate, or they wouldn't have. *Lucas* didn't demand any "unnatural" action or course of conduct; it merely required that if the spouses had an understanding, it be proven.

Section 4800.1, by contrast, goes much further: it requires not only that the parties *agree* to keep property separate, but that they *act* upon that understanding in a particular way. Retroactive application of section 4800.1 demands not only that the parties act, but that they have the prescience to *know* how to act before the law tells them. *Lucas* did not demand such prescience, and we should not demand it here.

unsound as a matter of policy. Attorneys who represent parties in family law cases can never know, with certainty, whether the Legislature will amend existing property relationships in the future. Consequently, if the Legislature or the Congress begins to enact retroactive property rights legislation as a matter of course, and if these enactments are upheld by the courts, family law practitioners will surely begin to file appeals routinely to protect their clients against the finality of judgments that could otherwise be altered by legislation enacted in the future but made retroactive. The net effect of retroactive legislation is that parties to marital dissolution actions cannot intelligently plan a settlement of their affairs nor even conclude their affairs with certainty after a trial based on then-applicable law. If there is any area of law in which finality and certainty and planning should be paramount, it is the area of family law. Great emotional stress occurs in prolonged proceedings, and it often affects the children of the marriage.

The application of section 4800.1 to husband in this case unconstitutionally deprives him of vested property rights in violation of due process of law. I would limit the application of section 4800.1 to cases where the property has been acquired in joint tenancy on or after that section's effective date, January 1, 1984.

I am also of the view the opinion in this case merits publication. (See Cal. Rules of Court, rule 976.)