[L.A. No. 32005. Mar. 13, 1986.]

In re the Marriage of KATHLEEN and C. JAMES FABIAN.
C. JAMES FABIAN, Appellant, v.
KATHLEEN FABIAN, Respondent.

## OPINION

**REYNOSO, J.**—In *In re the Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] we held that retroactive application of a statutory provision requiring a writing to prove, upon dissolution of marriage,

that property taken in joint tenancy during marriage was actually the separate property of one spouse impaired vested property rights without due process of law. We must now determine whether retroactive application of a companion measure which provides for reimbursement of separate property contributions to community assets absent a signed writing waiving such reimbursement produces the same unconstitutional result. We conclude that it does.

C. James (James) and Kathleen Fabian married on April 27, 1972, and separated on April 29, 1979. A few months after marrying, the couple purchased the Villa Viejo Motel (Villa Viejo), the subject of this dispute, taking title as "C. James Fabian and Kathleen, husband and wife as community property."

After a contested hearing, the trial court entered an interlocutory judgment of dissolution of marriage on April 23, 1982. In the findings of fact and conclusions of law filed one day earlier the trial court found, inter alia, that the Villa Viejo and its income were community property. The court assessed the net equity in the property at $790,391. The court also expressly found: "[James] invested $275,000.00 of money received from separate property into the Villa Viejo [] prior to separation. There was no promise or agreement between the parties that [James] should receive reimbursement or repayment of any part or all of said sum. [James], therefore, made a gift of said separate funds to the community asset." The court then ordered an accounting to determine the amount of Villa Viejo income that James had diverted to his separate property holdings and further ordered that the Villa Viejo be sold and the proceeds divided equally. A subsequent accounting set the amount diverted at $265,475.13.

James appealed the judgment, contending that the trial court erred in characterizing the Villa Viejo as community property. According to James, the trial court should have applied partnership law, not marital property law to the Fabian's "business arrangement" and ruled that Kathleen either had no continuing interest or was limited to a 15 percent share. James also asserts that he should not be required to reimburse the community for the Villa Viejo income he applied to his separate property because Kathleen's failure to object to James's use of $275,000 of his separate property to refurbish the motel, knowing that such a large capital outlay was necessary, constituted her agreement that the $275,000 would remain James's separate property.[1]

---

[1] James also challenges the community property characterization of two cemetery plots awarded to Kathleen. We can dispose of this contention without protracted discussion. James failed to challenge Kathleen's description of the plots as community property at trial. He raises the issue on appeal but fails to support his argument with any evidence that the community property designation is wrong. The trial court's determination was therefore proper.

While James' appeal was pending, Civil Code section 4800.2[2] was enacted as part of Assembly Bill No. 26.[3] Under section 4800.2,[4] in direct contravention of prior law, separate property contributions to community property assets are to be reimbursed upon dissolution, unless the contributing spouse has waived the right to reimbursement in writing.

## I

■■ Before reaching the issue of retroactive application of section 4800.2, we must consider James's contention that the trial court improperly characterized the Villa Viejo and his separate property contribution to it as community property. The record fully supports the trial court's findings that the Villa Viejo was community property and that James's separate property contribution to the property constituted a gift to the community.

At the time they married, Kathleen owned an industrial building and a single family residence; James owned, among other properties, the Beachtown Motel, a ranch and an interest in Delta Steel, a partnership. During the marriage, James traded the ranch for a second ranch, property on Mullholland Drive in Los Angeles and a condominium in Hawaii; and purchased a second motel, the Coral Reef, with money he received as a gift from his parents. James took title to each of these properties as separate property. In addition, James had Kathleen execute deeds on the properties granting each to James as his "sole and separate property."

The couple also purchased a home in La Habra which they intentionally took in joint tenancy. James made the down payment from separate property funds. He never asked Kathleen for reimbursement or for a deed in his favor.[5]

---

[2] All further statutory references are to the Civil Code unless otherwise indicated.

[3] Assembly Bill No. 26 added sections 4800.1 and 4800.2 and amended section 5110. (See Stats. 1983, ch. 342, §§ 1-4.)

[4] Section 4800.2 provides: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

[5] The court found that the Beachtown Motel, the Coral Reef Motel, the Hawaii condominium, the ranch, the Mulholland Drive property and certain other real and personal property were James' separate property. The court characterized the home in La Habra as community property and awarded it to Kathleen.

James made the $15,695 downpayment for the Villa Viejo from his separate property. Kathleen subsequently contributed $11,500, the proceeds from the sale of her house. Some time later James gave Kathleen a check for $11,800, and a note for that amount,[6] as repayment of her contribution. Kathleen never cashed the check. James did not ask Kathleen to execute a deed in his favor.

As noted, James invested a total of $275,000 of his separate property in the Villa Viejo, but withdrew $265,475.13 for use on his separate property holdings. He also had a practice of reimbursing Kathleen for any expenditures she made on the motel.

At trial, James testified that he had intended to purchase the Villa Viejo alone and had been negotiating with the previous owners before he married Kathleen. He agreed to let Kathleen invest in the venture, making her a part owner, because he "thought that might be interesting or good for both of us, that she would have sort of a joint interest there." He also yielded to her request that she be named on the deed to prevent potential conflict with his children, because "I felt this did make sense." According to James, he and Kathleen never discussed the ownership interest each would have in the motel, but he never intended it to be equal shares.

Kathleen testified differently. According to Kathleen, she had not chosen to invest; rather, James had demanded that she sell her house because he needed the proceeds to buy the motel and since she would be a half owner she "should put some money into it." He refused her request for a note in exchange for the money "because I already owned half of the Villa [Viejo]." James later agreed to give her the note but balked at including interest because of her ownership interest. Kathleen had requested the note because she did not trust James to repay the money which she planned to use for her children's education. She did not, however, consider repayment of the loan to be in lieu of an interest in the property because "I already had half ownership in it."

■ Taken as a whole, the record supports the trial court's finding that the Villa Viejo was community property. As we noted in *Buol*, " '[t]he status of property as community or separate is normally determined at the time of its acquisition.' [Citations.]" (39 Cal.3d at p. 757.) ■ Property acquired during marriage by an instrument describing the marital partners as husband and wife is presumed to be community property "unless a different intention is expressed in the instrument." (§ 5110. See also *See* v.

---

[6]It appears that Kathleen first asked James for a check, but changed her mind after he had executed the check and requested a note. Somehow she ended up with both instruments.

*See* (1966) 64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776].) The only intent expressed in this instrument supports the community property presumption: the couple chose to take title to the Villa Viejo as "C. James Fabian and Kathleen, husband and wife as community property."

█ To overcome the community property presumption the spouse asserting a separate property interest must establish by a preponderance of the evidence that the parties had a contrary agreement. (*Patterson* v. *Patterson* (1966) 242 Cal.App.2d 333, 341 [51 Cal.Rptr. 339]; *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 123 [264 P.2d 626].) "It is because of th[e] express designation of ownership that a greater showing is necessary to overcome the presumption arising therefrom than is necessary to overcome the more general presumption that property acquired during marriage is community property . . . [t]he act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest. Accordingly, the expectations of parties who take title jointly are best protected by presuming that the specified ownership interest is intended in the absence of an agreement or understanding to the contrary." (*In re the Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) █ James has failed to rebut the community property presumption.

The record is devoid of any evidence of an agreement or understanding that the Villa Viejo was not to be community property. James admitted that ownership interests were never discussed. The presumption of title cannot be overcome by a showing of hidden intent. (*Lucas, supra,* 27 Cal.3d at p. 813.) Nor do principles of partnership law apply. Lacking any evidence to the contrary, the trial court properly characterized the Villa Viejo and its income as community property.

From the time of purchase, therefore, Kathleen had a vested property interest in the motel as community property. (Cf. *Buol, supra,* 39 Cal.3d at p. 751; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].) This vested interest entitled Kathleen, at the time the trial court entered the interlocutory judgment, to half of the Villa Viejo (see § 4800, subd. (a).)

█ Moreover, for more than 20 years prior to the enactment of section 4800.2, it was well-established that, absent an agreement to the contrary, separate property contributions to a community asset were deemed gifts to the community. (*See, supra,* 64 Cal.2d at p. 785; *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 82-83 [154 Cal.Rptr. 413, 592 P.2d 1165]; *Lucas, supra,* 27 Cal.3d at p. 816.) "[A] 'party who uses his separate property for

community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect.' [Citations.] While the parties are married and living together it is presumed that, 'unless an agreement between the parties specifies that the contributing party be reimbursed, a party who utilizes his separate property for community purposes intends a gift to the community.' [Citation.]" (*Lucas, supra,* 27 Cal.3d at p. 816.)[7]

Nothing in the record suggests that the parties had an agreement that James's contributions would remain his separate property. Except in the context of his unsatisfying implied waiver argument, James makes no claim that such an agreement existed. Therefore, the trial court properly determined the community interest in the Villa Viejo to include the $275,000 gifted to the community.

## II

Section 4 of Assembly Bill No. 26 states, "This act applies to the following proceedings: . . . [¶] (b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of property are not yet final on January 1, 1984." (Stats. 1983, ch. 342, § 4.) As this matter was still on appeal on January 1, 1984, section 4800.2 presumably would apply to decrease the community property interest in the Villa Viejo, assuming it exists, from $790,391 to $515,391.[8] ▆▆▆ Retrospective legislation, however, may not be applied where such application impairs a vested property right without due process of law. (*In re Marriage of Buol, supra,* 39 Cal.3d 761.) As was true in *Buol,* the unconstitutional impairment in the present case is manifest.

▆▆▆ If applicable, section 4800.2 would operate to decrease Kathleen's share in the motel more than one-third to $257,695.50, half of the $515,391 interest remaining to the community after accommodation is made for James's revitalized separate property interest. Under section 4800.2 James would be entitled to reimbursement for his $275,000 separate property con-

---

[7]Contrary to James's assertion, this rule was not limited in scope to single family residences only. (See *See, supra,* 64 Cal.2d 778 [commingled funds considered gift to community].) The same concerns regarding the intent and reasonable expectations of the marital partners, and the need for uniformity in the division of marital property, apply across the board to all separate property contributions to community property, regardless of the form of the community property. Characterizing the Villa Viejo as an ongoing business does not alter the fact that the motel was a community property asset to which James contributed separate property funds.

[8]The record does not establish whether James would be entitled to full reimbursement. Section 4800.2 proscribes reimbursement for payments of interest on loans or for maintenance, insurance or taxes.

tribution because he never executed a written waiver of his newly created "right to reimbursement."[9] This reimbursement right did not exist at all prior to section 4800.2's January 1, 1984, effective date. Indeed, for more than a year and a half *after* the trial court rendered its judgment of dissolution, the long-established rule that separate property contributions were nonreimbursable absent a contrary agreement remained in effect. Thus, retroactive application of section 4800.2 would impair Kathleen's vested property interest.

Impairment of a vested property interest, alone, does not invalidate retroactive application of a statutory measure. Retroactivity is barred only when such impairment violates due process of law (Cal. Const., art. I, § 7). (*Buol, supra,* 39 Cal.3d at p. 761; *Bouquet, supra,* 16 Cal.3d at p. 592.)

In holding in *Buol* that application of section 4800.1 to dissolution proceedings commenced prior to January 1, 1984, impaired vested property interests without due process, we focused on the considerations first outlined in *Bouquet*: "'the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.'" (*Buol, supra,* 39 Cal.3d at p. 761.) Taken as a whole, these factors weigh heavily against retroactive application of section 4800.2.

Retroactive application is not "necessary to subserve a sufficiently important state interest." (*Bouquet, supra,* 16 Cal.3d at p. 593.) In *Buol,* we surveyed the legislative history of Assembly Bill No. 26, which contained both sections 4800.1 and 4800.2, and concluded that the significant state interest that compelled retroactivity in *Bouquet* and *Addison,* that of promoting "'equitable dissolution of the marital relationship'" by curing a "'rank injustice'" in the law, was lacking. It is also absent in the instant case.

The legislative history reveals two concerns: the need for a community property presumption affecting joint tenancy property to aid the courts in the division of marital property, and an unexplained desire to abrogate the

---

[9]Kathleen's contention that the community property form of title constituted a written waiver of James's separate property reimbursement rights is illogical. First, at the time title was taken, those reimbursement rights did not exist. Second, because the Legislature clearly intended section 4800.2 to apply to all community property (*post,* fn. 11), the community property form of title cannot operate to remove such property from within the scope of the statute.

rule, attributed solely to *Lucas, supra,* 27 Cal.3d 808, that "precluded recognition of the separate property contribution of one of the parties to the acquisition of community property." (Sen. Com. on Judiciary Rep. on Assem. Bill No. 26 (July 14, 1983) 3 Sen. J. (1983 Reg. Sess.) pp. 4865-4867.) Implicit in the later concern appears to be a legislative judgment that it would be fairer to the contributing party to allow separate property reimbursement upon dissolution.

This perceived need for reform does not, however, represent a sufficiently significant state interest to mandate retroactivity. The "rank injustice" of former law that we identified in *Bouquet* (former law made only the wife's postseparation earnings separate property) and in *Addision* (lack of protection for "innocent" spouse prior to passage of quasi-community property law) is not apparent. Prior to adoption of section 4800.2's right to reimbursement, the spouse contributing separate property to the acquisition of a community asset could readily preserve the separate property character of the contribution by agreement, either written or oral, with the other spouse. Absent such an understanding, it could reasonably be assumed that by investing in a community asset, the contributing spouse intended to bestow a permanent benefit on the community. In leaving the agreement option open to the contributing spouse, prior law was not inherently inequitable or unfair.

Absent patent unfairness in the former law, retroactivity of section 4800.2 is wholly unnecessary. As noted in *Buol,* the record is silent as to why the Legislature sought to make the statute applicable to those dissolution proceedings already underway at the time of enactment. (39 Cal.3d at p. 761.) We find no discernible benefit to the state's interest in the equitable dissolution of the marital partnership in such retroactivity.[10]

The extent of Kathleen's reliance on former law is difficult to pinpoint with accuracy. However, the legitimacy of such reliance is clear. Prior to section 4800.2's enactment, the no reimbursement law had been consistently followed by the courts since our 1966 decision in *See, supra,* 64 Cal.2d 778. During that time the Legislature had given no hint of displeasure with the rule. At the time the Fabians purchased the motel, through trial, and for more than 18 months thereafter, that rule was fully effective. At any time during the marriage competent counsel would have advised the Fabians that, absent a contrary agreement, James' separate property contributions to the motel were transmuted into community property. Until section 4800.2 was

---

[10]That the Legislature may have adopted section 4800.2 in response to changes in societal perceptions of the marriage relationship does not support retroactivity. Indeed, a statute which finds its basis in a "changing times" approach may well be the quintessential example of legislation that should only apply prospectively.

enacted, long after the couple separated and judgment of dissolution was entered by the trial court, the law was clear and straightforward: unrestricted separate property contributions to community assets were gifts to the community.

Finally, we consider the disruptive effect of retroactive application of the statute. It is difficult to imagine greater disruption than retroactive application of an about-face in the law, which directly alters substantial property rights, to parties who are completely incapable of complying with the dictates of the new law. As the law stood until long after the trial court entered its judgment of dissolution, an agreement was necessary to preserve a separate property interest in funds contributed to the acquisition of a community asset. The trial court found that no reimbursement agreement existed. Under the new law, no agreement is needed: the tables are turned so that the separate property interest is now *preserved* unless the right to reimbursement is waived in writing. In a case such as this one, however, it is improbable that such a writing would have been executed prior to the dissolution action or that it could be obtained afterwards. From the time the separate property funds were used to purchase an asset in the name of the community until after entry of the final judgment dissolving the marriage, no writing was required to preserve the community's interest in that asset. The separate property contribution automatically became a gift to the marital community unless the parties specifically agreed otherwise. The spouse who contributed separate property to the community had no right to reimbursement and, logically, there was no requirement that any waiver of such a right be written. By the time the Legislature created the new right to separate property reimbursement which could be waived only by a writing, the parties' marriage had been terminated by a final judgment of dissolution. The spouse who asserted a separate property right adverse to the community could hardly be expected to then execute a writing waiving his right to the property he claimed.

The disruptive effect of retroactive application of this type of statutory change is keenly felt in this area of the law. " 'The net effect of retroactive legislation is that parties to marital dissolution actions cannot intelligently plan a settlement of their affairs nor even conclude their affairs with certainty after a trial based on then-applicable law.' " (*Buol, supra,* 39 Cal.3d at p. 763, quoting *In re Marriage of Taylor* (1984) 160 Cal.App.3d 471, 479 [206 Cal.Rptr. 557] (Sims, J. dis.).) In the interest of finality, uniformity and predictability, retroactivity of marital property statutes should be reserved for those rare instances when such disruption is necessary to promote a significantly important state interest.

Because James failed to evidence any intent, by written or oral agreement during marriage, that his contributions to the community asset were to re-

main separate property, the law in effect at that time presumed a gift to the community. Applied retroactively, section 4800.2 would reward a claim that the absence of a writing now requires the opposite result—the funds must be characterized as separate property.[11] This retroactive, 180-degree departure from former law violates the parties' legitimate expectations while failing to advance the state interest in equitable dissolution of the marital partnership. As a result, retroactive application of section 4800.2 to cases pending on January 1, 1984, impairs vested property interests without due process of law.[12]

We conclude, therefore, that the statute may not be applied to these proceedings. The judgment of the trial court is affirmed.[13]

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., Lucas, J., and Kremer (Daniel J.), J.,* concurred.

---

[11]Kathleen's contention that section 4800.2 applies only to joint tenancy property is undermined by the plain language of the statute and its legislative history. The statute specifically covers "the division of community property under this part," which refers to that portion of the Civil Code encompassing the Family Law Act which governs all forms of marital property. This statutory language, virtually identical to that originally contained in Assembly Bill No. 1976, was added to newly proposed section 4800.2 of Assembly Bill No. 26 when the bill was amended to eliminate language restricting its scope to the division of joint tenancy property. (See Assem. Bill No. 1976 (1983-1984 Reg. Sess.); Assem. Amend. to Assem. Bill No. 26 (1983-1984 Reg. Sess.) Apr. 4, 1983; Stats. 1983, ch. 342; Assem. Com. on Judiciary, Consultant L. Young's Rep. on Assem. Bill No. 26, May 9, 1983.) The Legislature clearly intended section 4800.2 to apply to all community property. Thus, if the statute could be applied retroactively, it would apply in the present case.

[12]We hold only that application of the statute to cases pending on January 1, 1984, impairs vested rights without due process of law.

[13]Statements to the contrary in the following cases are disapproved: *In re Marriage of McDole* (1985) 169 Cal.App.3d 175 [215 Cal.Rptr. 116]; *In re Marriage of Palmer* (1985) 168 Cal.App.3d 190 [214 Cal.Rptr. 79]; *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548 [206 Cal.Rptr. 641]; *Taylor, supra,* 160 Cal.App.3d 471; *In re Marriage of Benart* (1984) 160 Cal.App.3d 183 [206 Cal.Rptr. 495]; *In re Marriage of Huxley* (1984) 159 Cal.App.3d 1253 [206 Cal.Rptr. 291]; *In re Marriage of Koppleman* (1984) 159 Cal.App.3d 627 [205 Cal.Rptr. 629]; *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20 [202 Cal.Rptr. 646]; *In re Marriage of Buford* (1984) 155 Cal.App.3d 74 [202 Cal.Rptr. 20]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572 [201 Cal.Rptr. 498]; *In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341].

*Presiding Justice, Court of Appeal, Fourth District, Division One, assigned by the Chairperson of the Judicial Council.