[No. A109284. First Dist., Div. Five. Apr. 27, 2006.]

In re the Marriage of ROBERT A. and LYNN A. WALKER.
LYNN A. WALKER, Appellant, v.
ROBERT A. WALKER, Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**Counsel**

Don A. Anderson for Appellant.

Crump, Bruchler & La Velle, E. H. La Velle III and Misha D. Igra for Respondent.

**Opinion**

**JONES, P. J.**—Appellant Lynn A. Walker (Wife) appeals the judgment that distributed community assets following the dissolution of her marriage to

respondent Robert A. Walker (Husband). She contends the trial court incorrectly valued the community real property and that there was insufficient evidence she breached her fiduciary duty to Husband.

## BACKGROUND

The parties married on August 21, 1980. During the marriage and prior to his retirement, Husband contributed to a Keogh retirement fund he had opened approximately 20 years before the marriage. When he retired on February 28, 1989, he rolled the Keogh fund into an individual retirement account worth $105,000 at the time (the Morgan Stanley IRA[1]).

In 1992 the parties bought a single family house in the Hidden Valley Lake development of Middletown, California (the Middletown house).

The parties separated on November 15, 2002, with Wife moving out of the Middletown house. When they separated the Morgan Stanley IRA was worth between $2,900 and $3,200.

On April 18, 2003, the Middletown house was appraised at $265,000.

On August 5, 2003, Husband petitioned for dissolution.

On December 30, 2003, the Middletown house was appraised at $303,000.

A judgment of dissolution as to status only dissolved the marriage effective July 30, 2004.

Following a trial that addressed issues of property distribution and allegations of Wife's breach of fiduciary duty, the court issued its statement of decision. Pertinent to this appeal, it assigned the Middletown house a value of $303,000, based on the expert's December 2003 appraisal and on Husband's opinion that corresponded with that appraisal. While the court found it likely the Middletown house had increased in value between December 2003 and trial, it did not find adequate evidence to support Wife's higher valuation. And while both parties testified that the Morgan Stanley IRA was Husband's separate property, the court rejected Wife's argument that as a consequence of

---

[1] The IRA was set up with the Dean Witter brokerage firm, which later merged into Morgan Stanley.

its status as Husband's separate property it was not subject to Wife's fiduciary duty. It found that the Morgan Stanley IRA, although in Husband's name, was community property due to a commingling of community and separate property funds and an inability to trace the separate property contributions. It found that Wife, who was the family bookkeeper, breached her fiduciary duty to Husband by failing to inform him of the significant depletion over the years of the Morgan Stanley IRA and of the consequent tax penalties. It found she had withdrawn $69,000[2] from the Morgan Stanley IRA without telling Husband, and that tax penalties of $2,066 had been incurred by these withdrawals.

The January 7, 2005 judgment on reserved issues awarded the Middletown house to Husband. Pursuant to Family Code section 1101, subdivision (g) it awarded Husband $71,066, the sum of Wife's withdrawals from the Morgan Stanley IRA and the tax penalties.[3]

Wife timely appealed the judgment on the reserved issues.[4]

---

[2] This figure is taken from Husband's exhibit 50, the annual IRA checking account statements from 1998 to 2002. The sum of all distributions from the Morgan Stanley IRA to the IRA checking account for those five years equals $69,000.

[3] Family Code section 1101, subdivision (g) provides that remedies for breach of fiduciary duty shall include an award to the other spouse of 50 percent of any asset transferred in breach of fiduciary duty.

[4] Husband moved to dismiss the appeal and for imposition of sanctions against Wife and her attorney on the grounds Wife was in contempt of the judgment when she filed her notice of appeal because she had failed to make monthly spousal support payments, to pay attorney fees, and to convey to Husband her community interest in an unimproved lot, all of which were ordered by the January 7, 2005 judgment. He also argues she waived her right to appeal when she accepted the benefit of the January 7, 2005 judgment, after she noticed her appeal. Specifically, he argues, the judgment ordered Husband to make an equalizing payment to her, he had done so, and she had cashed the check. He seeks sanctions, in the form of attorney fees, for having to respond to a warrantless appeal.

We deferred ruling on Husband's motion until we addressed the merits of the appeal. We now deny the motion. As to the contempt allegation supporting his motion, on December 23, 2005, the trial court found Wife was not in contempt for nonpayment or nonconveyance.

As to the "receiving benefits" basis of Husband's motion, the trial court calculated the equalization payment based on its valuation of the Middletown house and the sum charged to Wife as a result of breaching her fiduciary duty in depleting the Morgan Stanley IRA. As claims of error on appeal, Wife asserts the court should have assigned a greater value to the house and should not have found that she breached her fiduciary duty. Thus, should she prevail on appeal, she would be entitled to a greater equalizing payment. Should she not prevail, she remains entitled to the equalizing payment she received. When a judgment clearly establishes the appellant's right to recover, but the amount is less than she sought, she may accept the judgment and nevertheless appeal to claim the larger recovery. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744 [131 Cal.Rptr. 873, 552 P.2d 1169].) Because we deny the motion to dismiss, we also deny the request for sanctions as moot.

## DISCUSSION

### I. *Middletown House Valuation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Breach of Fiduciary Duty*

Wife contends the court erred in finding she breached her fiduciary duty owed to Husband by not disclosing the depletion of funds in the Morgan Stanley IRA. She argues the Morgan Stanley IRA was Husband's separate property, and therefore her management and control thereof were not subject to a statutory breach of duty under Family Code sections 721 and 1100. Alternatively, she argues she had no duty to disclose to Husband the amount in the Morgan Stanley IRA absent his request.

### A. *Background*

There was no evidence that the contributions Husband made during the parties' marriage to the Keogh retirement he had established before the marriage were *not* from community property funds. When the Keogh retirement was rolled over into the Morgan Stanley IRA worth $105,000 after Husband's 1989 retirement, the IRA was set up with an accompanying checking account (the IRA checking account). Husband set up the Morgan Stanley IRA so that 80 percent was "to stay and grow as an investment" and 10 to 20 percent was in the "liquid asset" checking account, which could be used as an "emergency fund." Every year the brokerage company automatically transferred a certain amount from the Morgan Stanley IRA into the IRA checking account to comply with Internal Revenue Service requirements governing IRA's. Husband thought the automatic annual distribution was "probably around" $2,500, but no documentary evidence was offered to establish it.

Wife was the parties' family bookkeeper during the marriage and handled all family finances in their home office because Husband did not want to do so. She was an authorized signatory on the IRA checking account and frequently wrote checks to herself from the checking account, which she then deposited into the parties' West America Bank joint checking account in order to pay bills. She also reviewed the Morgan Stanley IRA statements that came to the house, although they were addressed to Husband. Husband never asked her for the Morgan Stanley IRA statements; she did not know whether he looked at them on his own.

---

*See footnote, *ante*, page 1408.

If the parties wanted to transfer funds from the Morgan Stanley IRA to the IRA checking account in amounts greater than the funds that were transferred automatically, they had to make a special request. Wife made such additional withdrawals, and she knew that they created a tax liability. She arranged for them by telephoning the stockbroker. She was unaware of Husband ever instructing the stockbroker to act on her request for additional withdrawals. She acknowledged that in October 1993 she signed Husband's name on a written request for a supplemental withdrawal that she submitted to the brokerage company.

In the 12 1/2 years between Husband's 1989 retirement and the parties' 2002 separation, he never withdrew funds from the Morgan Stanley IRA, nor did he write checks on the IRA account.

When the parties separated in November 2002, the value of the Morgan Stanley IRA was between $2,900 and $3,200.[6]

There was conflicting testimony regarding Wife's authority to obtain additional withdrawals from the Morgan Stanley IRA, Husband's knowledge that she arranged for these withdrawals, and the causes of the decline in the value of the Morgan Stanley IRA.

Husband testified that the parties had no agreement that Wife could withdraw additional funds from the Morgan Stanley IRA, he never authorized her to do so, nor did he know during the marriage that she had done so. He learned of the withdrawals after their separation, when he had to review the parties' financial documents. He found statements from the brokerage company showing that Wife wrote monthly $2,000 checks to herself in 2001 and 2002. When Husband asked Wife after their separation about these withdrawals, she explained she used them to pay taxes and bills. She had never expressed concern to him during their marriage that they were living beyond their means.

Husband also testified that the Morgan Stanley IRA's depletion between 1989 and 2002 was not the result of any volatility in the stock market because the IRA was invested in mixed funds. He further testified that he had not examined any documents to determine that the depletion was *not* due to a decline in the stock market. However, his broker of 35 years' standing had informed him several months before trial that the market had no effect on "the set up" of his Morgan Stanley IRA.

---

[6] The record contains no documentary evidence regarding the value of the Morgan Stanley IRA at any time pertinent to these proceedings, e.g., in 1989 when it was established, in November 2002 when the parties separated, or anytime in the interim. Evidence of its value in 1989 and November 2002 is from Husband's testimony. Wife does not challenge these figures on appeal.

Wife testified that at least once she and Husband discussed having an "extra" deposit transferred to the IRA checking account; he agreed to the transfer and signed his "okay." She testified that the parties used the additional withdrawals from the Morgan Stanley IRA for several trips to Britain and Hawaii, for taxes, and for household expenses, and that they "lost some of" the IRA when the stock market dropped. Wife did not know how many years the Morgan Stanley IRA withdrawals were used for taxes, how much of these withdrawals was used for household expenses, or how much the Morgan Stanley IRA declined due to stock market declines.

Neither party offered documentary evidence regarding the effect of the stock market on the value of the Morgan Stanley IRA.

### B. *Wife's Contentions at Trial*

In her posttrial brief Wife rebutted Husband's argument that she had breached her fiduciary duty by depleting the Morgan Stanley IRA without his knowledge or consent on two grounds. First, she asserted that the Morgan Stanley IRA was not subject to an allegation of mismanagement under Family Code sections 721 and 1100[7] because it was Husband's separate property, and the two statutes apply only to breaches of fiduciary duty regarding community property. Alternatively, she argued that, even if a portion of the Morgan Stanley IRA was community property, there was insufficient evidence that she had mismanaged any community funds or breached any fiduciary duty owed Husband.

### C. *Statement of Decision and Judgment*

The trial court rejected Wife's argument that a separate property asset was not subject to a breach of fiduciary duty. It concluded that the broad language of Family Code section 721 extended to "the other party's separate property" because "[i]t doesn't make any sense" that a spouse is prohibited by statute from squandering community property but not from "steal[ing] . . . separate property." This conclusion was essentially dicta, because the court found that the Morgan Stanley IRA was a community asset, insofar as there was a commingling of community and separate property funds and an inability to trace the separate property contributions. As noted, the trial court further found that Wife breached her duty in failing to advise Husband of the

---

[7] As discussed more fully, *post*, Family Code section 721, subdivision (b) provides generally that spouses are subject to the general rules governing fiduciary relationships that control the actions of persons who occupy confidential relations with each other. Section 1100, subdivision (e) provides generally that spouses shall act with respect to each other according to the general rules governing fiduciary relationships in the management and control of the community assets and liabilities.

depletion of the Morgan Stanley IRA, and, pursuant to Family Code section 1101, subdivision (g) awarded to Husband the $69,000 Wife had withdrawn from the IRA without his knowledge from 1998 through 2002, the five years prior to the parties' separation.

### D. *Wife's Contention on Appeal*

On appeal, Wife reiterates her argument that the Morgan Stanley IRA was Husband's separate property and her management and control thereof was not subject to a breach of fiduciary duty under Family Code sections 721 and 1100. However, the factual and legal premises of her appellate argument differ from her trial court rationale.

At trial Wife's argument was premised on the entire Morgan Stanley IRA being Husband's separate property.

On appeal, Wife accepts that a portion of the Morgan Stanley IRA was community property, but argues that the community property portion was exhausted prior to 1998 to pay community debts. Therefore, she argues, the $69,000 that the court found she had withdrawn from the IRA without Husband's knowledge during the five years prior to the parties' separation, i.e., from 1998 through 2002, was Husband's separate property. Specifically, she asserts: (1) the community had a 27 percent interest in the $105,000 Morgan Stanley IRA when it was created at the time of Husband's 1989 retirement;[8] hence, in 1989 the community property portion of the Morgan Stanley IRA was worth $28,350 and Husband's separate property portion was worth $76,650; (2) because the trial court found the Morgan Stanley IRA was depleted by $69,000 in the five years prior to the parties' November 2002 separation, the IRA was depleted by $36,000 between February 1989 and November 1998 ($105,000 - $69,000 = $36,000);[9] (3) it was undisputed that Wife used all funds she withdrew from the Morgan Stanley IRA between Husband's February 1989 retirement and the parties' November 2002 separation to pay community debts; (4) the law presumes community debts are paid first with community funds, and, after community funds are exhausted, with separate funds; (5) therefore, the $28,500 of community funds were necessarily depleted from the Morgan Stanley IRA before November 1998, and the

---

[8] Wife calculates the 27 percent figure from the following facts: Husband began contributing to the Keogh retirement fund in 1960. The parties married in August 1980, and Husband continued to contribute to the fund for another "7 1/2 [*sic*: 8 1/2] years to his retirement on February 28, 1989." Seven and one-half (the number of years Husband's contributions to the fund came from community funds) is approximately 27 percent of 28 (the total number of years Husband contributed to the fund).

[9] This step in Wife's calculation would have the Morgan Stanley IRA depleted completely. It overlooks the fact that, as Husband testified and Wife accepts on appeal, the Morgan Stanley IRA was worth $2,900 to $3,200 when the parties separated in November 2002.

$69,000 that the trial court ascribed to Wife as a breach of her fiduciary duty was Husband's separate property, because this sum represented withdrawals from the Morgan Stanley IRA made after November 1998.

We reject Wife's argument that she cannot be liable for breach of fiduciary duty because the $69,000 she withdrew from the Morgan Stanley IRA without Husband's knowledge was Husband's separate property. First, the trial court found that the entire Morgan Stanley IRA was community property because of the commingling of community and separate funds and the inability to trace the separate contributions. Wife has not specifically challenged this finding on appeal. The most fundamental rule of appellate review is that a judgment is presumed correct, and the appealing party must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) An issue not raised is deemed waived. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457]; *Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1 [27 Cal.Rptr.2d 249].) Wife's assertion on appeal that Family Code sections 721 and 1100 do not apply to breaches of fiduciary duty regarding separate property necessarily rests on a finding that the Morgan Stanley IRA was, at least in part, separate property. Because Wife has not affirmatively shown that the court erred in concluding the entire Morgan Stanley IRA was community property, she may be deemed to have waived the issue of whether the court's characterization was correct. Thus, any argument concerning whether there can be a breach of fiduciary duty in conjunction with separate property may be deemed moot.

Second, even if we assume that Wife is impliedly arguing the trial court erred in characterizing the entire Morgan Stanley IRA as a community asset, we reject her argument. Our assumption is based on her appellate explanations of the separate and community values of the Morgan Stanley IRA at the time of Husband's retirement and that the community portion of the IRA was exhausted in satisfying community debts prior to 1998. As a rule, parties are precluded from urging on appeal any points that were not raised before the trial court. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412 [286 Cal.Rptr. 592].) To permit a party to raise a new theory is both unfair to the trial court and unjust to the opposing litigant. (*Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 503 [157 Cal.Rptr. 190].) Wife's newly posited appellate theory of why the $69,000 is Husband's separate property is based on her apparently newly devised formula for calculating the separate and community values of the Morgan Stanley IRA in 1989 and her assertion that the community value was completely expended as of 1998 in paying community debts. Husband did not have an opportunity at trial to challenge the factual or legal bases for her calculations or assertions, nor did the trial court have the opportunity to evaluate those facts or apply them to the applicable rules governing characterization and division of marital property.

▮ Finally, like the trial court, we deem Wife's assertion that a spouse cannot be subject to statutory breach of fiduciary duty for mismanagement of separate property to be contrary both to sound public policy and to the language of Family Code section 721, subdivision (b) which speaks of the confidential relationship between husband and wife imposing on them the duty of "highest good faith and fair dealing" and not taking "unfair advantage of the other." We can fathom no reason to distinguish between a spouse's duty to deal fairly and in good faith with separate property and her duty to deal fairly and in good faith with community property.

### E. *Duty to Disclose*

The fundamental reason the court found Wife breached her fiduciary duty was not simply that she made withdrawals from the Morgan Stanley IRA. It was her failure, as the family bookkeeper responsible for the parties' financial affairs, to inform Husband that the Morgan Stanley IRA was shrinking significantly each year as a result of these withdrawals and that the withdrawals had tax consequences. Wife contends she cannot be liable for breach of fiduciary duty for this reason because she had no duty to disclose the amount of funds in the Morgan Stanley IRA to Husband absent his request.

Resolution of the question of whether Wife, under the facts of this case, can be liable for failure to disclose requires an examination of the history of Family Code sections 721 and 1100, subdivision (e).

### i. *Original Family Code Section 721*

Family Code section 721 was enacted in 1992. (Stats. 1992, ch. 162, § 10, p. 464.) Family Code section 721, subdivision (b) provided that the confidential relationship of spouses is a fiduciary relationship subject to the same rights and duties of nonmarital business partners "as provided in Sections 15019, 15020, 15021, and 15022 of the Corporations Code, including the following:

"(1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.

"(2) Rendering upon request true and full information of all things affecting any transaction which concerns the community property. . . .

"(3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property." (Fam. Code, former § 721, subd. (b)(1), (2), & (3).)

In 1992, when Family Code section 721 was enacted, Corporations Code section 15019 stated: "The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them." This right of access to books was expressed in subdivision (b)(1) of Family Code section 721.

Corporations Code section 15020 stated: "Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability." This right to full disclosure was expressed in subdivision (b)(2) of Family Code section 721.

Corporations Code section 15021 stated: "(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property. [¶] (2) This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner." This section was expressed in subdivision (b)(3) of Family Code section 721.

Corporations Code section 15022 stated: "Any partner shall have the right to a formal account as to partnership affairs: [¶] (a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, [¶] (b) If the right exists under the terms of any agreement, [¶] (c) As provided by Section 15021, [¶] (d) Whenever other circumstances render it just and reasonable." Family Code section 721, subdivision (b) did not specifically enumerate a right to an accounting.

ii. *Family Code section 1100, subdivision (e)*

Family Code section 1100, subdivision (e) was enacted in the same statute as Family Code section 721, subdivision (b). (Stats. 1992, ch. 162 § 10, p. 464.) It states: "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the

community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request." (Fam. Code, § 1100, subd. (e).)

The placement of the phrase "upon request" creates an ambiguity in the last sentence of Family Code section 1100, subdivision (e). It may reasonably be read as referring to both the requirement "to make full disclosure to the other spouse of all material facts, [etc.]" and the requirement "to provide equal access to all information, records, and books [etc.]." It may also reasonably be read as referring only to the latter requirement to provide access to books.

■ The court's task in construing a statute is, of course, to ascertain the Legislature's intent to effectuate the purpose of the statute. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].) To that end, the various parts of a statutory enactment must be harmonized by considering the particular clause in the context of the statutory framework as a whole. (*Ibid.*) ■ Because Family Code section 1100, subdivision (e) specifically incorporates the scope of spousal fiduciary duty set forth in the simultaneously enacted Family Code section 721, and section 721 required a spouse to render true and full information "upon request," the phrase "upon request" in Family Code section 1100, subdivision (e) is most logically construed as applying to both articulated duties in subdivision (e): full disclosure of all material facts regarding the valuation of community assets *and* providing access to all records pertaining to those values.

■ We find further support for this construction from the punctuation in Family Code section 1100, subdivision (e). The "last antecedent rule" is a long-standing rule of statutory construction that provides that " ' "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' " (*Renee J., supra,* 26 Cal.4th at p. 743, quoting *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) However, evidence that a qualifying phrase is intended to apply to all antecedents, not only the immediately preceding one, may be found when a comma separates the antecedents and the qualifying phrase. (*White, supra,* at p. 680.) Here, the phrase "upon request" is set off from the preceding antecedent duties by a comma.

■ Given these rules of statutory construction, we conclude that when the Legislature enacted Family Code sections 721 and 1100, subdivision (e) as part of the same statute, it intended that the duty to make full disclosure and the duty to provide equal access both turned on a request by the other spouse.

### iii. *1996 Revision of Corporations Code*

In 1996, effective January 1, 1997, the sections of the Corporations Code that included the Uniform Partnership Act, including the four sections enumerated in Family Code section 721, subdivision (b), were repealed and replaced with the Revised Uniform Partnership Act. (Stats. 1996, ch. 1003 §§ 1.2, 2, pp. 5906, 5908).) The essence of former Corporations Code sections 15019, 15020, and 15021[10] is now in Corporations Code sections 16403 and 16404, but the language of the new sections is considerably broader.

Pertinent to this appeal, Corporations Code section 16403, entitled "Books and records; right of access" states, in relevant part:

"(a) A partnership shall keep its books and records, if any . . . at its chief executive office.

"(b) A partnership shall provide partners and their agents and attorneys access to its books and records. It shall provide former partners and their agents and attorneys access to books and records pertaining to the period during which they were partners. . . .

"(c) Each partner . . . shall furnish to a partner, and to the legal representative of a deceased partner or partner under legal disability, both of the following . . .

"(1) *Without demand*, any information concerning the partnership's business and affairs reasonably required for the proper exercise of the partner's rights and duties under the partnership agreement or this chapter; and

"(2) *On demand*, any other information concerning the partnership's business and affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances." (Italics added.)

While former Corporations Code section 15020 only required partners to render information of all things affecting the partnership "on demand," the

---

[10] Former section 15022 was not replaced in the new sections of the Corporations Code.

1996 statute now requires partners to furnish certain essential information to each other even if they do not demand it.[11]

Family Code section 721 was not simultaneously amended in 1996 to renumber its references to the Corporations Code sections so that they reflected these newly enacted sections of the Corporations Code.

### iv. *2001:* In re Marriage of Duffy

In *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923 [111 Cal.Rptr.2d 160] (*Duffy*), the couple had a lengthy marriage, during which the husband made various investments and gave the wife varying levels of information regarding the investments. One investment was a brokerage IRA account containing nine stocks worth $482,925 in February 1995. (*Id.* at p. 928.) On the suggestion of his broker, the husband invested the IRA account in a single company. (*Ibid.*) In May 1998 the value of the IRA account had fallen to $297,309. (*Ibid.*) There was some expert testimony that the IRA investments were risky, and if they had been invested in a more conservative manner, the

---

[11] Corporations Code section 16404, entitled "Fiduciary duties," states:

"(a) The fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subdivisions (b) and (c).

"(b) A partner's duty of loyalty to the partnership and the other partners includes all of the following:

"(1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity.

"(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership.

"(3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

"(c) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

"(d) A partner shall discharge the duties to the partnership and the other partners under this chapter or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

"(e) A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest.

"(f) A partner may lend money to and transact other business with the partnership, and as to each loan or transaction, the rights and obligations of the partner regarding performance or enforcement are the same as those of a person who is not a partner, subject to other applicable law.

"(g) This section applies to a person winding up the partnership business as the personal or legal representative of the last surviving partner as if the person were a partner."

Corporations Code former sections 15019, 15020, and 15121 did not specify that partners had a fiduciary duty or a duty of care, although case law had held that they were bound to act in highest good faith.

yield would have been higher. (*Id.* at pp. 928, 929.) The trial court found the husband breached his fiduciary duty of full disclosure and awarded the wife damages of $400,684. (*Id.* at pp. 926, 929.)

The appellate court reversed. It first concluded there was no evidence that the wife sought, and the husband failed or refused to provide, information about the IRA account. (*Duffy, supra*, 91 Cal.App.4th at pp. 933, 934.) Therefore, *Duffy* concluded there was no support for the trial court's finding that the husband breached his fiduciary duty of full disclosure upon request, as set forth in Family Code sections 721, subdivision (b)(2) and 1100, subdivision (e). (91 Cal.App.4th at pp. 930, 933, 934.)

*Duffy* then discussed whether the finding of breach could be upheld on the ground the husband breached some fiduciary duty other than the specified statutory duty of full disclosure upon request. (*Duffy, supra*, 91 Cal.App.4th at p. 934.) It examined the legislative history of Family Code section 721, and concluded that by narrowing the scope of the fiduciary duty to the three rights/duties specifically enumerated in Family Code section 721, subdivision (b)(1), (2) and (3), the Legislature removed a "duty of care." *Duffy* based this conclusion on the fact the Legislature used only the word "including" before subdivision (b)(1), (2), and (3), instead of the phrase "including, but not limited to" those three enumerated rights/duties. (*Duffy, supra*, at pp. 939, 940.) "By limiting the rights to those enumerated, and echoed by specific Corporations Code provisions, the Legislature eliminated the possibility that [Family Code section 721] subdivision (b) could be interpreted expansively to include the duty of care a nonmarital partner owes another nonmarital partner, as set forth in Corporations Code section 16404. In other words, by including certain Corporations Code provisions while eliminating the expansive words, 'but not limited to,' the Legislature necessarily excluded all other provisions" of the specified Corporations Code sections. (*Duffy, supra*, at p. 940.)

*Duffy*'s reference to Corporations Code section "16404" in conjunction with its discussion of Family Code section 721, subdivision (b) is, strictly speaking, inexact. When Family Code section 721, subdivision (b) was enacted in 1992, Corporations Code section 16404 did not yet exist. *Duffy*'s reference to Corporations Code section 16404 reasonably assumed that the Legislature would be amending Family Code section 721, subdivision (b) to substitute Corporations Code sections 16403 and 16404, enacted in 1996, for the simultaneously repealed Corporations Code sections 15019, 15020, and 15021 that were enumerated in Family Code section 721, subdivision (b). However, *Duffy* did not compare the changes in language between the repealed Corporations Code sections and their replacement sections.

### v. *2002 Amendments to Family Code Section 721*

In 2002, effective January 1, 2003, Family Code section 721 was amended with "the intent of the Legislature in enacting this act to clarify that Section 721 of the Family Code provides that the fiduciary relationship between spouses includes all of the same rights and duties in the management of community property as the rights and duties of unmarried business partners managing partnership property, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, and to abrogate the ruling in *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, to the extent [the *Duffy* ruling] conflict[s] with this clarification." (Stats. 2002, ch. 310, § 2).)

As amended, Family Code section 721 states, in pertinent part:

"(b) . . . This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections *16403, 16404,* and *16503*[12] of the Corporations Code, including, *but not limited to*, the following:

"(1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.

"(2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property. . . ."

Family Code section 1100, subdivision (e) has not been amended since its enactment in 1992. Because it adopts from Family Code section 721 the scope of spousal fiduciary duty vis-à-vis community personal property, as of January 1, 2003, it necessarily adopts the amended section 721.

### vi. *Retroactive Effect of Amended Family Code Section 721*

Critical to the resolution of this case is whether amended Family Code section 721 is retroactive, insofar as the parties separated in November 2002, before the amended statute took effect on January 1, 2003.

"A statute is retroactive if it affects rights, obligations, acts, transactions and conditions performed or existing prior to adoption of the statute and substantially changes the legal effect of those past events. [Citations.]" (*In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1439 [28 Cal.Rptr.2d

---

[12] Corporations Code section 16503, included in the amended Family Code section 721, subdivision (b) authorizes and governs the effect of the transfer of a partner's transferable interest. The former Corporations Code sections enumerated in Family Code section 721, subdivision (b) did not pertain to transfers.

726].) There is a strong presumption that statutes are to operate prospectively, absent evidence the Legislature intended them to be applied retroactively. (*Ibid.*; *Kizer v. Hanna* (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679].) "This long-established presumption applies particularly to laws creating new obligations, imposing new duties, or exacting new penalties because of past transactions. [Citations.]" (*Reuling, supra*, at p. 1439.)

■ By contrast, a statute that merely clarifies, rather than changes, existing law does not operate retrospectively, even if applied to transactions predating its enactment, because the true meaning of the statute remains the same. (*In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 255 [30 Cal.Rptr.3d 5].) A clarified law is simply a statement of what the law has always been. (*Ibid.*) However, while the court may give due consideration to the Legislature's views, a legislative declaration of an existing statute's meaning is neither binding nor conclusive on the courts in construing the statute. (*Ibid.*) A court cannot accept the Legislature's statement that an unmistakable change in the statute is nothing more than a clarification and restatement of the statute's original terms. (*Id.* at p. 256.) Legislative history may be used to assist the court's inquiry, but ultimately the court must determine whether an amendment changed or merely clarified existing law. (*Ibid.*)

The final legislative bill analysis to Senate Bill No. 1936 (2001–2002 Reg. Sess.), the bill enacted as chapter 310 to amend Family Code section 721 effective January 1, 2003, states: "The effect of this bill hinges on just four little words: 'but not limited to.' The <u>Duffy</u> court found that the Legislature's failure to include these words in Family Code Section 721 meant that a spouse's duties were in fact limited to those enumerated in that Section [i.e., subdivision (b)(1), (2) & (3)]. This bill adds 'but not limited to' to clarify what the sponsor believes was the original intent of Family Code Section 721: to apply to spouses all fiduciary duties existing between nonmarital business partners under Corporations Code Sections 16403, 16404, and 16503.[13] These are duties [such] as to access to books and records; fiduciary duties including the duty of loyalty, the duty of care, and an obligation of good faith and fair dealing; and requirements to the transfer of a partner's transferable interest in a partnership. Applying all such duties appears to be in line both with the true intent of the Legislature in enacting Family Code Section 721 . . . ." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1936 (2001–2002 Reg. Sess.) as amended July 2, 2002, p. 3.)

---

[13] The analyst overlooks that it would have been impossible for the sponsor of the original Family Code section 721 to intend in 1992, when section 721 was enacted, that it apply to "Corporations Code Sections 16403, 16404, and 16503" because those sections were not enacted for another four years.

As to the renumbered sections of the Corporations Code incorporated into the amended Family Code section 721, subdivision (b), the final analysis and the several preceding analyses state only that Corporations Code sections 15019, 15021, and 15022 have been repealed and that Senate Bill No. 1936 updates the references to refer to Corporations Code sections 16403, 16404 and 16503, "the comparable sections included in the current, renumbered version of the Uniform Partnership Act." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1936 (2001–2002 Reg. Sess.) as amended July 2, 2002, p. 4.) None of the legislative analyses of the bill to amend Family Code 721, subdivision (b) contains any discussion of the differences in language between the repealed Corporations Code sections and the replacement sections that took effect January 1, 1997, six years before the amended Family Code section 721 took effect.

Given the comments in the legislative analyses, the specifically stated intent included in the statute itself (Stats. 2002, ch. 310), and the Legislature's swift reaction to *Duffy* (see *In re Marriage of McClellan, supra*, 130 Cal.App.4th at p. 257), we conclude the Legislature perceived the amendments to Family Code section 721, subdivision (b) as only a clarification of the law.

However, a close reading of the now-repealed Corporations Code sections enumerated in the originally enacted Family Code section 721 and the different Corporations Code sections enumerated in the amended Family Code section 721 demonstrate that the Legislature, notwithstanding its stated intention to clarify, was doing more than simply reiterating the existing state of the law. The now-repealed Corporations Code sections that the original Family Code section 721 incorporated to define the rights and duties of the spousal fiduciary relationship required only that partners provide each other *on demand* all "information of all things affecting the partnership." (Former Corp. Code, § 15020.) By contrast, the Corporations Code sections enacted in 1996, which the 2002 amendment to Family Code section 721 employs to define these rights and duties, impose a duty on partners to furnish each other *without demand* "any information concerning the partnership's business and affairs reasonably required for the proper exercise of the partner's rights and duties. . . ." (Corp. Code, § 16403, subd. (c)(1).)

█ A statute that creates a new obligation by imposing, for the first time, a *specific requirement that a spouse convey certain information about the* partnership's, i.e., community's affairs, even if the other spouse has not requested this information, constitutes more than a simple clarification of existing law. It provides an "unavoidable implication that the Legislature intended" to change it. (Cf. *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 844 [123 Cal.Rptr.2d 40, 50 P.3d 751].) We conclude therefore

that the 2002 amendment to Family Code section 721, which based the scope of spousal fiduciary duty on duties that did not exist prior to the 2002 amendment, makes Family Code section 721 retroactive, to the extent that Corporations Code sections 16403, 16404, and 16503 impose greater duties on partners than did former Corporations Code sections 15019, 15020, 15021, and 15022.

### vii.  *Punitive Effect of Retroactive Application to the Present Case*

It is particularly compelling to the facts of this case that amended Family Code section 721, subdivision (b) and, by extension, section 1100, subdivision (e) which applies the broad spousal fiduciary duty of section 721 specifically to the fiduciary duty regarding community personal property, should not be applied retroactively.

It is undisputed that at all times during their marriage Husband had access to the Morgan Stanley IRA statements and the IRA checking account. Wife did not hide these documents. There is no evidence that Husband ever asked Wife for information regarding the Morgan Stanley IRA, or that he did so inquire and she misrepresented its financial status, or that she used the Morgan Stanley IRA funds only to her advantage and patently to Husband's disadvantage. Indeed, the evidence is that Wife used the funds for community purposes, such as trips, taxes, and household expenses. There is no evidence that she used them, for example, to support any clandestine self-indulgent behavior. There is no evidence Husband was prevented from inquiring about the IRA documents due to a mental or physical disability. Nor can Husband be deemed naïve about financial matters generally. He had owned an insurance agency, had a brokerage account for 40 years before he retired, was familiar with the concept that mutual funds allow for diversification so as to reduce investment risk, and had purchased, sold, and refinanced real property.

As a recognized authority on the subject of retroactive and prospective application of statutes has stated: "[R]etroactive laws are characterized by want of notice and lack of knowledge of past conditions and [they] disturb feelings of security in past transactions." (2 Sutherland (5th ed. 1993) Statutory Construction, § 41.04, p. 350.) To penalize Wife now for breach of a statutory spousal duty that did not exist during the parties' marriage would disrupt the repose that should follow the actions she undertook in accordance with the established customs and practices of their marriage and which were intended to serve their marital community, not her personally.

## DISPOSITION

The judgment is reversed to the extent it awards Husband $71,066, representing withdrawals from the Morgan Stanley IRA from 1998 to 2002 and attendant tax penalties. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

Simons, J., and Gemello, J., concurred.