Filed 8/19/15  Wells Fargo Bank v. Cornell CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WELLS FARGO BANK N.A., as Executor, etc.,<br><br>     Respondent,<br><br>          v.<br><br>JANET CORNELL,<br><br>     Appellant;<br><br>WELLS FARGO BANK, N.A. as Trustee, etc.,<br><br>     Real Party in Interest and Respondent. | G049747<br><br>(Super. Ct. No. 30-2011-00448349)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Law Office of John Devine and John Devine for Appellant.

Jeffer Mangels Butler & Mitchell, Neil C. Erickson and Susan Allison for Real Party in Interest and Respondent.

\*          \*          \*

This is an appeal by Janet Cornell (Janet)[1] from a judgment after a bench trial. The court denied three petitions for approval of trust accountings that Janet filed as trustee of the community property trust established by Janet and her husband Clark Cornell (Clark) in 1999. Certain trust transactions were challenged by Clark's guardian ad litem, who was appointed in 2009. The court also surcharged Janet for Clark's half of funds that were paid from either Clark's separate trust or to the community property trust, finding Janet acted in violation of her fiduciary duties. The court ordered Janet to pay these amounts to Wells Fargo Bank, NA (Wells Fargo), real party in interest, in its capacity as trustee of Clark's separate trusts.

Among other things, the court concluded that 1) Clark was incapacitated as of January 1, 2006; 2) certain expenditures by Janet thereafter violated her fiduciary duties as successor trustee, and 3) some expenditures also violated a written agreement Janet and Clark signed when they were married which preserved the separate property nature of Clark's trusts, except to the extent he decided to contribute such property to the community funds.

On appeal, Janet argues primarily: the guardian ad litem did not have standing to request or challenge the pertinent accountings; Clark had capacity to "participate" in transactions after January 1, 2006 and supposedly did so; Janet did not breach any duties to Clark; and given Clark's death in July 2014, after the judgment was entered, the judgment is ineffective or moot. We find that none of these arguments persuasive and therefore affirm the judgment.

---

[1] We refer to the parties by their first names for the ease of the reader. No disrespect is intended. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

# I

## FACTS

Janet[2] and Clark were married in December 1998. Clark's first wife, Barbara, to whom he was married for 54 years, died three months earlier. Clark and Barbara had three children, all of whom were adults by the time of Barbara's death. Clark and Barbara were very financially successful and did extensive estate planning, including the execution and funding of several trusts.

When Clark and Janet married, Janet also had three grown children. At the time they were married, Clark and Janet signed what the trial court described as a prenuptial agreement. Janet acknowledged that Clark's property would remain separate, and that any income derived from that property would also be separate property, as would any other property purchased from the separate property funds. Any conversion to community property would require a written agreement.

On April 12, 1999, Clark and Janet executed the Janet and Clark Cornell Trust (the Community Property Trust) funded by community property assets, including those then or later contributed by Clark. The numerous trusts that comprise or involve Clark's estate plan include:

– The "A" (or Survivor's) Trust of the Clark and Barbara June Cornell Trust (the A Trust). This trust represents Clark's share of the Clark and Barbara June Cornell Trust, and is Clark's separate property.

– The "B" Exempt Trust of the Clark and Barbara June Cornell Trust (the B Exempt Trust), representing Barbara's share of the marital trust that was generation-skipping transfer tax exempt.

---

[2] Janet's briefs are poorly organized, mixing factual recitations and legal arguments, and thereby making it difficult to separate and so888rt out her legal claims. We have done our best to do so and deem any remaining point waived due to inadequate briefing. (*Akins v. State of California* (1998) 61 Cal.App.4th 1, 17, fn. 9.)

– The "B" Non-Exempt Trust of the Clark and Barbara June Cornell Trust (the B Non-Exempt Trust), representing Barbara's share of the marital trust that was *not* generation-skipping transfer tax exempt.

– The "C" Trust of the Clark and Barbara June Cornell Trust (the C Trust), representing the exemption, or bypass trust.

– The Charitable Remainder Trust between Clark and June, which was Clark's separate property.

– The Community Property Trust.

– The Janet Cornell Separate Property Trust.

At some point, Clark began showing signs of dementia, and he received a diagnosis of Alzheimer's disease in 2005. In 2002, Clark had executed a special power of attorney designating Janet to act as his attorney-in-fact over his assets. This document was recorded and took effect in March 2007, but this was after Clark's physician, Dr. Storch, had stated under oath that Clark was unable to manage his financial affairs.

Meanwhile, in August 2006, Janet had filed a petition under Probate Code section 2590 authorizing independent exercise of powers, and asking the court to judge Clark to lack the capacity to give informed consent to medical treatment. This request conflicted with Janet's subsequent statements that as late as 2008, Clark continued to make all the financial decisions regarding the various trusts and assets. The powers Janet sought in 2008 would have vested her with the control of all the decisions she later claimed Clark continued to make. In her petition in support of the 2006 request, under penalty of perjury, Janet stated that Clark had to be accompanied by someone at all times for the prior two years, and he was unable to cook, buy food, use the telephone or drive a car. The petition also stated Clark had not "'participated in financial matters for two (2) years due to cognitive impairment. . . . He can no longer decipher invoices or write the checks necessary for household upkeep.'" Janet eventually withdrew this petition.

4

In October 2009, under penalty of perjury, Janet executed a petition for appointment of a temporary conservator for Clark. At about the same time, Clark purportedly filed a petition to appoint Janet as conservator. Clark was represented by the same attorney as Janet. The petition again alleged Clark's impairment and stated he had not "solely managed" his financial affairs for five years prior to the petition.

At a hearing on October 14 on a trust petition, Clark was unable to answer simple questions such as when he had hired his attorney or where he lived. He thought he was in court to get his son to pay him some money that was owed. The court appointed an independent guardian ad litem, Suzanne Tague. On November 24, while considering the conservatorship petitions, the court appointed Tague as guardian ad litem in those proceedings as well. Conservators were named, including Janet as estate conservator, but the guardian ad litem was not, as far as the record reflects, relieved of her appointment.

In 2011, Janet filed petitions for orders approving three accountings and confirming and ratifying various transactions. Tague filed objections and sought a surcharge for those expenditures. These, along with matters in the related appeal, G049748, were tried before the court over several days in September and October, 2013.

As pertinent here, the court found: 1) Clark was not competent to act after January 1, 2006; 2) The guardian ad litem had standing to seek legal redress on Clark's behalf and challenge the accountings; 3) Janet had breached her fiduciary duties by "making improper expenditures, by commingling Clark Cornell's separate property with community property and by attempting to transmute community property to her own separate property;" 4) Accordingly, the court surcharged Janet a total of $824,000, covering six separate instances of breach of fiduciary duty. Janet was ordered to pay Wells Fargo, as trustee of Trust A, an amount representing Clark's half of community property assets improperly used; 5) The court denied Janet's accounting petitions; and 6) The court removed Janet as Clark's agent and directed certain annuity income be paid to

5

Wells Fargo as trustee of Trust A, with Wells Fargo to pay Janet specific amounts for her support.

Judgment was entered on January 15, 2014. Janet appealed. On July 12, 2014, Clark passed away. The guardian ad litem filed a motion to withdraw from the appeal thereafter. The motion was granted. Wells Fargo, as executor of Clark's estate, filed a motion to substitute as a party, which was also granted.

II

DISCUSSION

*Standard of Review*

Janet concedes the standard of review is abuse of discretion. Accordingly, we review the trial court's factual findings for substantial evidence. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.) We do not reweigh the credibility of witnesses or resolve conflicts in the evidence. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 622.) While any legal issues are reviewed de novo, the application of the facts to the law is only reversible error if it is so arbitrary and capricious that it exceeds the bounds of reason. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

*The Guardian Ad Litem*

Janet argues the guardian ad litem was "improperly appointed," and therefore presumably lacked standing to object to Janet's actions and expenditures. Even assuming the appointment of the guardian ad litem is a proper subject for appeal now, instead of seeking relief when she was first appointed, we find no error.

The trial court relied on Probate Code section 1003, subdivision (a), which states: "The court may, on its own motion or on request of a personal representative, guardian, conservator, trustee, or other interested person, appoint a guardian ad litem at any stage of a proceeding under this code to represent the interest of any of the following

6

persons, if the court determines that representation of the interest otherwise would be inadequate. [¶] . . . [¶] (2) An incapacitated person." The guardian ad litem was appointed in 2009 after the court concluded that Clark was incapacitated. Janet argues the court violated minimum due process requirements[3] by not explaining the purpose of a guardian ad litem to Clark at the time of appointment.

We disagree. First, the cases she relies upon are limited to the context of dependency proceedings. (*In re James F.* (2008) 42 Cal.4th 901; *In re Sara D.* (2001) 87 Cal.App.4th 661.) Second, in both of these cases the order appointing the guardian ad litem was appealed promptly – it was not used as a convenient excuse years later to undo court proceedings not in the appellant's favor. Third, any error here in not fully explaining the purpose of a guardian ad litem to Clark was harmless beyond a reasonable doubt. He did not know why he was in court, when he hired his attorney, or even where he lived. Clark said he did not know the questions were going to be "so hard." There is no indication from the record that a more thorough explanation would have benefitted Clark; and indeed, Clark's counsel (hired by Janet) had no objection to the appointment of a guardian ad litem at the time as long as the court was inclined to appoint Janet to that role. Janet's objection appears to be less to the appointment of a guardian ad litem than to the fact that she was not appointed. In any event, there was no error, and the guardian ad litem had standing to represent Clark in these proceedings.[4]

---

[3] This is one of several points which Janet fails to develop at all in her opening brief, but expands upon in her reply. Counsel are cautioned that this is improper. To the extent any argument raised solely in her reply brief is not mentioned here, it is deemed waived. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108-109.)

[4] To the extent Janet also claims the guardian ad litem could not begin legal proceedings without Clark's approval, she is simply wrong. The entire role of a guardian ad litem is to act on the incapacitated person's behalf. We also reject Janet's reply brief argument that the guardian ad litem exceeded her scope as improperly raised.

*Clark's Capacity*

Although it is somewhat unclear, Janet appears to object to the trial court's findings that Clark lacked capacity after January 1, 2006. While not directly attacking the more than substantial evidence clearly supporting the trial court's determination on this issue, she claims that with regard to certain loans and transactions that occurred after that date, Clark "was not only competent to participate in these transactions, but in fact did participate in these decisions and actions." That is the extent of her argument, unsupported by legal authority.

The court, however, had numerous sworn statements by both Janet and Clark's doctor dating back to 2006 testifying to his incapacity, as summarized in the statement of facts. Janet attempted to repudiate some of this testimony at trial, attempting to recharacterize and reframe the evidence, but the court disagreed. She now calls what he had "short term memory defecits." Contrary to Janet's claims, the court was not relying merely on Clark's diagnosis (see *In re Marriage of Greenway* (2013) 217 Cal.App.4th 628), but the contemporaneous statements of Janet herself and Clark's doctor as to his capacity. The court's conclusion that Clark was incapacitated as of 2006 is in concert with the relevant portions of the Probate Code discussing incapacity. There was no error on this point.

*Breach of Fiduciary Duties*

Janet next argues the court wrongfully surcharged her with respect to certain transactions in the accountings. The court found that while Janet was entitled to continue her comfortable lifestyle during Clark's incapacity, that was "not the profligate lifestyle demonstrated by [Janet's] accountings. Money appears to have slipped through her fingers like water running on her hands."[5] The court concluded that Janet breached

---

[5] As an example of what the trial court is referring to, the accounting shows Janet spent $90,000 on clothing in 2006 and $107,000 in 2007 from the Community Property Trust.

her fiduciary duties to Clark by "making improper expenditures, by commingling Clark Cornell's separate property with community property, and by attempting to transmute community property to her own separate property."

Specifically, the court found that rental income from a property in La Palma, owned by the A Trust, should have been deposited in that trust from the date of Clark's incapacity until Wells Fargo took over as trustee. The court also surcharged Janet the following: $200,000, representing Clark's half of community funds for a loan made to Janet's son Ben Anderson (Ben); $130,000, representing Clark's half of community funds used for payments to a business called Uptown 4 Townhomes; $50,000, representing half of the community funds used for gifts to Janet's daughter-in-law Tracy Anderson and Janet's grandchildren; $309,000, representing Clark's half of the community funds used for "unexplained cash and/or ATM withdrawals;" $20,000, representing Clark's half of the community funds "used for the Tahitian vacation that Mr. Cornell did not attend;" and $115,000 to rebalance the first account.

Janet argues she was "prudent" in the management of the Community Property Trust. She argues Clark chose to fund the Community Property Trust with his separate property. Apparently she asserts that she is not liable for any breach of trust because Clark consented, but at the relevant times Clark was legally incapacitated, and any such consent was legally invalid. She relies on a case discussing the fiduciary relationship between spouses, but there was no incapacity at issue in that case. (*In re Marriage of Walker* (2006) 138 Cal.App.4th 1408.) The property at issue in *Walker* was indisputably community property, while here, the court concluded Janet attempted to transmute some community property into her separate property, and Clark's separate property into community property. None of the cited authority supports the argument

9

that Janet cannot be liable for a breach of trust.[6]  Janet also argues the lack of "undue influence" on their agreements, but that is not at issue here and was not mentioned by the trial court.

*Surcharges*

We briefly review the listed surcharges.  Janet admits that as of March 2007, she began acting as sole trustee of the Community Property Trust.  Janet also admitted that at least $300,000 of the loan to Ben was paid from the Community Property Trust.  The promissory notes, however, stated that payment would go to Janet's own trust.  As of trial, none of the loan amounts had been repaid in any event.  In 2008, Ben received an additional $100,000 from the Community Property Trust, which had also not been repaid as of the trial date.

Janet argues that she and Clark had made earlier loans to Ben from the Community Property Trust, and Ben had a "successful track record" of paying them back.  This, however, is irrelevant – she took funds from the Community Property Trust and directed repayment into her own trust, thereby transmuting those funds.  She also relies on Ben's testimony that he intended to pay the loans back, although Janet never requested such a payment during her time as trustee.  Taken together, these facts support the trial court's conclusion that a surcharge for Clark's share of the community property was appropriate.

The next surcharge involves $130,000, representing Clark's share of a $260,000 payment from the Community Property Trust to Ben as part of his investment in Uptown 4 Townhomes.  Janet contends this was not a loan but funds paid to acquire an

---

[6] In her reply brief, Janet argues a provision in the Community Property Trust transmuted any property Clark transferred to it.  Given the scope of the trial court's orders and the focus on the period of Clark's incapacity, this is not particularly pertinent, despite Janet's claims to the contrary.  During the period of Clark's incapacity, he could not legally choose to transmute his separate property into community property.

interest in the limited liability company. She admits the property was lost. Janet argues, however, there was nothing imprudent about this investment and its failure was not due to any acts of hers. The reason the property was lost was because *Ben* failed to make a payment, severely undermining the contention that doing business with Ben was not a risky proposition. The trial court's decision that a surcharge was appropriate is supported by substantial evidence.

The next surcharges are for gifts to Janet's daughter-in-law and grandchildren, and a Tahitian vacation that Clark did not attend. Janet does not dispute these funds all came from the Community Property Trust. She again claims Clark was sufficiently competent to participate in making the decisions regarding these funds and in fact did so. This argument, again, is rejected as being unsupported by the facts. The trial court properly surcharged Janet for these funds.

The trial court also surcharged Janet for $115,000 based on the undisputed fact that the first account was $230,000 out of balance. Janet's only explanation at trial stated this was due to unexplained cash or ATM withdrawals that purportedly dated back to 2002-2003. But there was evidence that Clark maintained records back to 2002 for the Community Property Trust, and no explanation for the shortfall. Given Janet's status as trustee, it was her responsibility to find the explanation. The surcharge was appropriate.

*Timeliness*

Janet argues that the guardian ad litem's objections were untimely under the terms of the Community Property Trust. She cites to no evidence she ever raised this issue below, and it is therefore waived.

*Impact of Clark's Death*

Janet next argues the surcharges should be reversed because upon Janet's death, she was entitled to Clark's share of the community property. She misses the point

11

entirely that the surcharges are intended to remedy the improper transmutations and commingling of Clark's separate property with the community property that occurred while Clark was still alive.  Accordingly, this argument is rejected.

## III

## DISPOSITION

The judgment is affirmed.  Wells Fargo is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

12